■ In the Matter of DOROTHEA M. WEITZNER, Respondent, v DIVISION OF HOUSING & COMMUNITY RENEWAL et al., Respondents, and EMILIO AMBASZ, Intervenor-Appellant.—Judgment, Supreme Court, New York County (Stephen G. Crane, J.), entered February 5, 1992, which set aside as arbitrary and capricious an order of the respondent Division of Housing and Community Renewal (DHCR) dated April 30, 1991, unanimously reversed, on the law, and the petitioner's CPLR article 78 petition is dismissed, without costs. Order, Supreme Court, New York County (Stephen G. Crane, J.), entered on or about February 14, 1992, which granted petitioner a preliminary injunction permitting tenant access to the main lobby of the subject building, unanimously reversed, on the law, and the injunction is vacated, without costs.

Petitioner-respondent Dorothea M. Weitzner (hereafter "tenant") is the only remaining tenant in the subject building known as 8 East 62nd Street in Manhattan. Dr. Robert L. Cucin (hereafter "owner") was the owner of the building from 1979 until June 23, 1992, when he sold it to Emilio Ambasz, the intervenor-respondent-appellant.

In November 1983 the owner was issued a permit by the New York City Buildings Department to alter the building to create a medical office, surgical facility and residence for himself in those portions of the building over which he had gained possession, but he neglected to file a form R-50 with the Division of Housing and Community Renewal (see, 9 NYCRR 2203.10; Administrative Code of City of NY § 26-408 [c]). The plans provided that the lobby on the first floor was to be used as a waiting room for the owner's patients, and the tenants were to enter and exit through a newly constructed lower lobby with a new intercom system, door buzzer, security system with closed circuit video cameras, emergency lighting and fire sprinklers.

In early 1984 construction began, and it resulted in disruptions of services including boarding up of the front entrance, elevator out of service and construction debris in common areas of the building. In February 1984 the tenants commenced a harassment proceeding against the owner, which resulted in a July 6, 1987 order of Deputy Commissioner Manuel Mirabal fining the owner and directing him "to obtain

an Order of the Administrator permitting him to change the location of the tenants' entrance or, in the alternative, to restore the original service [access to first floor lobby entrance] to the tenants."

While the harassment proceeding was pending, tenant Weitzner brought a separate complaint in April 1984 alleging diminution of services, which resulted in an order of the District Rent Administrator dated August 13, 1985 directing the owner to permit tenant access to the first floor lobby. On September 3, 1985 the owner filed a petition for administrative review (PAR) which was denied on August 12, 1987 by Deputy Commissioner Mirabal in a decision which made specific reference to and relied upon his decision and order issued the previous month (on July 6, 1987), wherein the owner was directed to "either obtain an Administrator's order permitting him to change the location of the tenants' entrance or to restore the original service to the tenants."

Tenant Weitzner had initiated a third proceeding in April 1986 seeking a reduction in rent, which culminated in an order of the District Rent Administrator dated April 14, 1987 directing the owner to restore access to the lobby. The owner did not pursue a PAR because the Deputy Commissioner ruled on July 6, 1987 that the owner had the option to obtain an order of the Administrator permitting him to change the location of the tenants' entrance.

On June 28, 1988, the owner applied to the DHCR for permission to modify the services in the building by requiring the tenant to enter and exit through the lower lobby. This application was granted in an order of the District Rent Administrator dated December 28, 1988, as amended February 6, 1989. The tenant filed a PAR, resulting in the April 30, 1991 order and opinion of Deputy Commissioner Elliot Sander, which after reviewing the prior proceedings and orders, and taking into account the "unique facts and circumstances of this case," concluded that elimination of the tenant's access to the first floor lobby was "not inconsistent with the Rent Stabilization Law or Code, provided the tenant is accorded a corresponding decrease in rent reflective of this diminution of service." (See, Rent Stabilization Code [9 NYCRR] § 2522.4 [d] [3].) In reaching this conclusion Deputy Commissioner Sander took into consideration that the one remaining rent regulated tenant was not deprived of access to the premises or her apartment, the expense incurred by the owner in connection with the conversion, which was done in accordance with the approval of the Department of Buildings, and the impractical-

ity of forcing the owner to disrupt his medical practice by requiring the dismantling of the construction prior to his making an application to decrease services.

We find that the DHCR's determination had a " 'rational basis' " *(Matter of Fazio v Joy,* 58 NY2d 674, 676), and accordingly the IAS Court's judgment vacating that determination must be reversed. It necessarily follows that the order dated February 14, 1992 which granted the tenant-petitioner's motion for a preliminary injunction must also be reversed. Concur—Carro, J. P., Wallach, Asch and Kassal, JJ.